Counsel, you may approach. This is our third case in the morning. In re. The Criminal Contempt of Susan Turner. For the appellant, Mr. Kevin Sullivan. Thank you, Justice Nexon. It's also, Karen Hudson, the case was consolidated. Ah, yes. Thank you. Or the cases were, I should say, consolidated. But may it please the court, normally I would acknowledge counsel and reserve my right for rebuttal, but I don't think I'll be able to rebut myself this morning. I will plan on being very brief. I know based upon the announcements and the information I received from the clerk that the court is aware of the, more than likely, the facts as they've been set forth, as well as the law. And it is definitely my privilege, pleasure to appear here today. It has been and remains my pleasure to represent Karen Hudson and Susan Turner throughout this rather unusual proceeding. A little bit of background in this situation. Karen Hudson and Susan Turner, as well as others, belong to this organization called the Socially Responsible Agricultural Project. The way this case started was related to another case that was filed in 2010, Marsh et al. versus Sandstone. And it had to do with one of these hog containment farms down in Scott County. And these are very hot-button issues because there are the pork producers and the hog farmers on one side and you've got the people that are interested in the environment and the ethical treatment of animals on the other. So these are somewhat hot-button issues. Going back to April 1, 2014, Karen Hudson and her husband, both of whom are present this morning, and another lady, Susan Turner, came down to watch the trial, so to speak. And the week before was jury selection, which took two or three days, as I understand it. And they came into the courtroom and Mr. Hudson actually brought an unmarked box and it had some literature in it. And before court convened, I believe Ms. Hudson might have handed somebody one of the pamphlets. Well, no commotion, no interruption. The court was not in session at this point. And opening statements started that morning. And the opening statement was given by one of the plaintiff's attorneys that took most of the morning. To digress for a second, one of the requirements of direct criminal contempt is the person would have acted, whether it was consummationally or willfully. Karen Hudson, who was ultimately held in contempt that afternoon, that morning had to excuse herself from the courtroom as a spectator to use the restroom. And I don't know if any of you have had the opportunity recently to be down in the Scott County Courthouse. It is probably contemporary with Abraham Lincoln or maybe it was built during his era. But it is an old, charming courthouse. But as you walk through the floor, on the second floor, where the courtroom is, or on the floorboards of the stairs, it creaks and it makes a lot of noise. It makes a guy of my size a little bit nervous thinking I'm going to find the first floor quicker than I want. However, Karen went to use the restroom and so to not disturb the proceedings, she left the building so not to make all sorts of noise walking through the floors because it was noisy. She never came back until after the lunch break that day. So again, she was trained to be respectful of the proceedings. After lunch, one of the defense attorneys, having heard the plaintiff's opening statement, said to the judge, Judge, I was told by an unknown person that somebody had distributed literature in this courtroom. Well, the judge said, wait a second. We're going to have some activist in here? That's not right. We're not going to let that happen. We're going to investigate. He gathered everybody together. The judge says, I don't know who this person was. I haven't seen anything. There was no disturbance. And the judge started the inquiry. This is not direct criminal contempt. Judge Cherry did not see anything occur. The defense attorney, Stephen Kaufman, from here in Springfield, did not see anything occur. The inquiry had to be made. An investigation had to be made. As the case I read indicated, if the incident occurred within the ocular periphery of that judge, where that judge could take judicial notice of what occurred, that may be right for direct criminal contempt. Otherwise, it is not. Judge Cherry convened everybody. He did his inquiry. They never really found out what exactly happened. But there was nobody that infiltrated anything. Nobody was improperly influenced, including a jury member. And to sit here and criticize Judge Cherry, which is what I'm doing, which I normally don't criticize jurists. I have all the respect in the world for jurists, as my father was one. But I will tell you, I think Judge Cherry made the wrong call. I wasn't involved in this case at that time. I was brought in later. I filed a motion to vacate shortly after that. I went down to Scott County to argue the motion. Of course, I'm arguing to the judge. And I was frankly, based upon my preparation and reading that day, I was very concerned on who I was going to come across. Was this the dictator of the county? Was this the potentator? Is he going to take my head off, much like I thought he did to my clients? And I was frankly rather nervous that day. I get down there and I meet the most amiable, charming, welcoming judge there is. We had a very good discussion. I presented the case. He said he took it under advisement. Waited about 14 months. I got a one-line response saying, motion's denied. This is now appealable. And counsel, in your motion to reconsider, you laid out pretty clearly what you felt were the mistakes in terms of direct versus indirect. I did. And I will tell you that, and I think this is especially relevant before this fourth district appellate court, I think the best case there is that's ever been written on the issue of contempt is the Betz case by your Justice Steigman. That has been, it should be in a law school book to tell you the truth. And I rely on that. It's still good law. Every case that I've come across, appellate courts frown on direct criminal contempt. It's an extraordinary remedy. In this case, I think it was the heat of the moment. I think it was the pressure of the case where the judge reacted improperly. And, you know, to short circuit this, if you look at the, in our case, if you look at the index, I'm sorry, the appendix, rather, the judge's order, and I presume you've seen this, Judge Cherry, although this occurred on April 1st of 2014, on April 2nd, he issued his order of contempt, both against Susan Turner and Karen Hudson. The court, having discovered from reports of attorneys involved in an ongoing jury trial, he admits right there he did not see it. He had to investigate. He had to learn it. Steve Kaufman, the defense attorney who brought it to the judge's attention, did not see it, did not know it. Oftentimes we see in a courtroom the term double hearsay. This would almost be that situation. It's once removed from even an attorney seeing it, twice removed from the court actually being able to take judicial notice. And there was, if something occurred that day that was improper, Karen Hudson and Susan Turner were not given notice of what the appropriate decorum was. You know, if you stand before a court and you do something that's so flagrant, like use an expletive or do something else physically, that's obvious. But in courtroom decorum, for example, about what you can wear, where you should sit, what you can bring with you, things like that, typically a person should be given notice before they're held accountable for direct criminal contempt. I think I mentioned in my brief, even that particular morning, Karen Hudson and Susan Turner. Again, I believe Susan was brought in by guilt by association and that's it. But they asked other people to remove stickers or pins where they were supporting a certain cause because they knew that wasn't appropriate in the courtroom. So there was no intent. There was no willfulness in this situation. And I'd be happy to answer any questions. But I think in this situation we've established this is not direct criminal contempt. I don't believe it's contempt. I would ask the court to outright reverse this, vacate the findings of contempt. There's nothing to remand at this point. If it is considered indirect criminal contempt, that would be something to be separately prosecuted in which Karen and Susan would be entitled to all of their constitutional rights, both under the state and federal constitutions. They'd be entitled to due process and much as if this was initiated a separate independent direct indicted case or what have you. So for these reasons, I believe it's justified to have the orders and judgments of contempt vacated. Thank you, Your Honors. Are both of your clients here? No. Ms. Turner lives up in northwestern Illinois and she did not make it here. Well, you can give Ms. Turner a call. We're reversing from the bench with an order to call. Thank you, Your Honor. I was going to say that I've developed a very interesting good relationship with Judge Cherry, and I won't muddy up the record, but if anybody wants to meet me in the hall, I've got some funny stories about this and my relationship after this occurred. We'll await that for a later date. Thank you very much.